UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

D. SCOTT MATTSON,

Plaintiffs,

v.

JOHN DOE, WHITEBIT, and KUCOIN,

Defendants.

Case No.: 26-CV-6516 JLS (BJW)

**ORDER (1) GRANTING MOTION FOR LEAVE TO ELECTRONICALLY FILE DOCUMENTS, (2) DENYING WITHOUT PREJUDICE LEAVE TO EFFECT ALTERNATIVE SERVICE, AND (3) GRANTING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER**

(ECF Nos. 2, 3, 5)

Presently before the Court is Plaintiffs D. Scott Mattson's Motion for a Temporary Restraining Order ("Mot.," ECF No. 2), Motion for Expedited Discovery and for Leave to Effect Alternative Service ("Mot. for Alt. Serv.," ECF No. 3), and Motion for Leave to Electronically File Documents ("Mot. to File," ECF No. 5), filed on November 17, 2026. For the following reasons, the Court **GRANTS** Plaintiffs' Motion for a Temporary Restraining Order. Leaving the Motion to Expedite Discovery to Magistrate Judge White, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion regarding leave to effect alternative service. The Court finally **GRANTS** Plaintiff's Motion for Leave to

Electronically File Documents.

## BACKGROUND

Mr. Mattson alleges that, due to fraudulent phone calls, he inadvertently disclosed his cryptocurrency wallet recovery seed phrase (i.e., password) to an unknown individual using a fake login website. *See* ECF No. 1 at 8–9 ("Compl."). The individual transferred about $305,215 out of Mr. Mattson's wallets. *Id.*

Mr. Mattson says he has used blockchain analytics to trace some of the proceeds of the theft into cryptocurrency exchange accounts ("Destination Accounts"), with WhiteBIT and with KuCoin. *Id.* 9–12.[1]

| Exchange | Destination Tag or Deposit Address | Funds | Amount |
|---|---|---|---|
| WhiteBIT | 3214965853 | XRP | 60,281 |
| WhiteBIT | 1587611258 | XRP | 60,590 |
| WhiteBIT | 0x0e82c0f5560ba5ec225772dea243d3668b9ddabb | ETH | 10.529609 |
| WhiteBIT | 0xf403b24c2b88fa05f3a33f22811f807effbaf631 | ETH | 4.572779 |
| KuCoin | 32QWU6bFzDgMKtcN5fJvN3bfkLXR9qDzwN | BTC | 1.49999383 |

WhiteBIT has stated that the funds have been converted and left the WhiteBIT exchange. Compl. at 10. However, KuCoin temporarily froze the associated account until November 22, 2026. *Id.* at 12.

Mr. Mattson, proceeding pro se, filed the present Complaint against unidentified Defendant John Doe, asserting claims of conversion, unjust enrichment, constructive trust and equitable lien, and naming Defendants WhiteBIT and KuCoin (collectively "Exchange Defendants") as relief defendants ("Compl.," ECF No.1). Mr. Mattson seeks a constructive

[1] "Cryptocurrency transactions are permanently recorded on publicly available distributed ledgers called blockchains. As a result, law enforcement can trace cryptocurrency transactions to follow money in ways not possible with other financial systems." Cryptocurrency, Internet Crime Complaint Center, www.ic3.gov/crimeinfo/cryptocurrency (last visited Nov. 18, 2026).

trust and equitable lien and the return of his stolen assets.

Mr. Mattson also filed the present motion for a temporary restraining order ("TRO") seeking to freeze Doe's assets, including the assets held in the Destination Accounts, to preserve the status quo during litigation. Mot. at 2. Because Doe's identity is currently unknown to Mr. Mattson, Doe has not been served with the Complaint or with the pending Motion.

## TEMPORARY RESTRAINING ORDER

### I. Legal Standard

A court may only issue a temporary restraining order without notice to the adverse party when:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Ex parte temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for*

*Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## II. Discussion

The Court finds sufficient basis for ex parte relief. In his sworn certification, Mr. Mattson asserts that notice to the account holder should not be required because of the risk of withdrawal. ECF No. 1-2 at 2. "The cryptocurrency at issue here 'poses a heightened risk of asset dissipation.'" *Jacobo v. Doe*, No. 22-CV-672-DAD-BAK (BAM), 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) (quoting *Fed. Trade Comm'n v. Dluca*, No. 0:18-cv-60379-RKA, 2018 WL 1830800, at *2–3 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-cv-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018)). Mr. Mattson stated as such in his Motion. Mot. at 3 ("Without immediate relief, Mr. Mattson's traceable property will be gone before the adverse parties can be heard."). The Court finds that issuance of relief on an ex parte basis is justified for the reasons set forth.

Further, an asset freeze is appropriate relief at this stage of litigation. Typically, a court will only order an asset freeze after claims have been brought to judgment. *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). But a court may freeze a defendant's assets if the plaintiff seeks equitable relief and the requirements for a preliminary injunction are met. *In re Focus Media, Inc.*, 387 F.3d 1077, 1084 (9th Cir. 2004); *Jacobo*, 2022 WL 2052637 (granting a cryptocurrency account freeze under similar circumstances). The Court now considers the merits of Mr. Mattson's Motion.

First, Mr. Mattson is likely to succeed on the merits of his conversion claim. The Court need not address the likelihood of success on the other claims. "Conversion occurs where the defendant wrongfully exercises dominion over the property of another." *Bank*

*of New York v. Fremont General Corp.*, 523 F.3d 902, 914 (9th Cir. 2008) (citations omitted). Under California law, the elements of a conversion claim are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) [defendant's] conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." *Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*, 161 F. Supp. 3d 910, 916 (E.D. Cal. 2016). "Because conversion is a strict liability claim, a defendant's 'good faith, lack of knowledge, motive, or intent are not relevant' in establishing a claim for conversion." *Id.* (quoting *Joe Hand Promotions, Inc. v. Albright*, 2:11-cv-02260-WBS-CMK, 2013 WL 2449500, at *8 (E.D. Cal. June 5, 2013)).

Based on Mr. Mattson's allegations, Doe transferred Mr. Mattson's cryptocurrency assets without authorization. The Court finds all three elements for conversion are likely to be met.

Second, as discussed above, Mr. Mattson asserts irreparable harm because "once KuCoin's freeze lapses, the account holder . . . will withdraw the frozen Bitcoin, after which it will be effectively unrecoverable . . . ." Mot. at 5. Usually, monetary harm is not irreparable. *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851–52 (9th Cir. 2009). And even when cases involve alleged cryptocurrency theft, district courts have found no irreparable harm if monetary damages are available and would suffice. *Ryan v. Best In Slot, LLC*, No. 25-CV-2348 AGS (BLM), 2025 WL 2656279, at *3 (S.D. Cal. Sept. 15, 2025). But here, when there is an unknown account owner, monetary damages are not available. *See Jacobo*, 2022 WL 2052637, at *5 (collecting cases). Therefore, the Court finds Mr. Mattson is likely to suffer immediate and irreparable harm in the absence of injunctive relief regarding the KuCoin accounts.

Construing Mr. Mattson's pro se pleading liberally, the Court also finds irreparable harm regarding the WhiteBIT accounts. Although, Mr. Mattson alleges that all stolen funds have already been transferred, he proposes a TRO that would apply to "any remaining or traceable proceeds" in the WhiteBIT accounts. The Court finds that, despite the alleged representation by WhiteBIT that all stolen assets have been transferred, Mr.

Mattson adequately alleges a likelihood that traceable assets remain in the WhiteBIT accounts and that irreparable harm will occur in the absence of injunctive relief.

Third, the balance of equities and public interest favors a TRO. Mr. Mattson claims the hardship to him is severe and irreversible. Mot. at 8. And the burden on the Exchange Defendants is minimal because it only affects accounts with Mr. Mattson's stolen assets. The Court agrees. The Court also finds Defendant Doe would not be overly burdened because the TRO would only maintain the status quo and delay Doe from being able to shift assets to other accounts. *See Jacobo*, 2022 WL 2052637, at *6 (collecting cases). Further, public interest "is properly served by . . . providing assurance to the public that courts will take action to promote protection of assets and recovery of stolen assets 'when they can be readily located and traced to specific locations.'" *Id.* (quoting *Heissenberg v. Doe*, No. 21-CV-80716-RKA, 2021 WL 8154531, at *2 (S.D. Fla. Apr. 23, 2021)).

Finally, Federal Rule of Civil Procedure 65(c) requires the party moving for a temporary restraining order to "give[ ] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Because Defendant's identity is unknown at this time, there is no evidence before the court demonstrating that defendant will suffer any damages as a result of the requested temporary restraining order. Therefore, the Court will not require Mr. Mattson to post a bond. *See, Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction.").

**LEAVE TO EFFECT ALTERNATIVE SERVICE**

Mr. Mattson seeks leave to effect alternative service in two ways. First, he requests permission to serve Defendant John Doe by a non-fungible-token ("NFT") airdrop to the wallet addresses identified above. Mot. for Alt. Serv. at 4. Second, to serve the Exchange Defendants via email. *Id.* at 5.

/ / /

Federal Rule of Civil Procedure 4(f) provides for service on an individual in a foreign country by, as relevant here, "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" or "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1), (3).

Even if permissible under Rule 4(f)(3), service by NFT or email "must also comport with constitutional notions of due process." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). "Service by email can satisfy due process when a foreign defendant structured its business on the internet using email as the preferred contact method and did not list an easily discoverable street address." *Keck v. Alibaba.com, Inc.*, No. 17-CV-05672-BLF, 2018 WL 3632160, at *2 (N.D. Cal. July 31, 2018) (citing *Rio Props., Inc.*, 284 F.3d at 1016–17).

With regards to all Defendants, the Court finds Mr. Mattson's proposed methods of service are appropriate to give actual notice of this Order but, at this time, not to effect service of the Complaint and summons.

For Defendant John Doe, Mr. Mattson asserts his location and identity are unknown. "Although the Hague Service Convention does impose restrictions on certain forms of service of documents abroad, those restrictions do not apply where the identity and address of the person to be served is not known." *Legacy Investments Holdings, LLC v. John Does 1–20*, 2025 WL 2988640, at *4 (N.D. Cal. Oct. 23, 2025) (citing Hague Convention, art. 1.). Further, Mr. Mattson intends to make "a good-faith effort to identify the Thief by first subpoenaing the Exchanges . . . ." Mot. for Alt. Serv. at 5. Other courts in this circuit have allowed service by NFT when the plaintiff is unable to determine the identity or contact information of the defendant. *See, e.g.*, *Trikha v. Doe*, No. 26-cv-04706, 2026 WL

1395941, at *8–9 (N.D. Cal. May 18, 2026); *Legacy Investments Holdings, LLC*, 2025 WL 2988640, at *4. But the Court finds that such service is not appropriate at this juncture. Mr. Mattson may use the proposed NFT service to give Defendant John Doe actual notice of this Order. However, he should exercise more diligence as to Doe's contact information before resorting to service of the Complaint and summons via NFT. *See Sagedi v. Defendant "1"*, No. 24-cv-6628 MWC (SKx), 2025 WL 4739822, at *4 (C.D. Cal. July 1, 2025).

For WhiteBit, Mr. Mattson states that the global operating entity is based in Lithuania. Mot. for Alt. Serv. at 5. Lithuania is a signatory to the Hague Convention but objects to Article 10, which authorizes service by postal channels. The Republic of Lithuania Declarations on the Hague Convention, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=410&disp=resdn (last visited November 19, 2026); *Prolacta Bioscience, Inc. v. Prolact Ltd.*, No. 24-CV-10392-WLH-E, 2025 WL 1040638, at *1 (C.D. Cal. Jan. 13, 2025).

For KuCoin, Mr. Mattson asserts that it is based in the Seychelles. Mot. for Alt. Serv. at 6. Although the Seychelles is not a member of the Hague Conference on Private International Law, it is a signatory to the 1965 Service Convention that governs here. *See* Non-Member: Seychelles, Hague Conference on Private International Law, https://www.hcch.net/en/states/other-connected-parties/details2/?sid=127 (last visited Nov. 19, 2026); *Mou v. BTC King Tech. Co., Ltd.*, No. 26 civ. 1311 (CM), 2026 WL 2123322, at*1 (S.D.N.Y. July 23, 2026).

It is not clear whether the Hague Service Convention prohibits email service. The Second Circuit concluded that it does. *Smart Study Co., Ltd. v. Shenshenshixindajixieyouxiangongsi*, 164 F.4th 164, 170–71 (2d Cir. 2025). There, the court relied on the Supreme Court holding that the Convention "specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies." *Id.* (quoting *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017)).

Several courts in this Circuit have found the opposite: the Convention permits service by email. *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*, No. 18-CV-00297-BAS-BGS, 2019 WL 246562, at *3 (S.D. Cal. Jan. 17, 2019) (finding that service by email on defendants in China was permissible under the Hague Convention); *TV Ears, Inc. v. Joyshiya Dev. Ltd.*, No. 3:20-CV-01708-WQH-BGS, 2021 WL 165013, at *4 (S.D. Cal. Jan. 19, 2021) (same); *but see Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 988 (N.D. Cal. 2020) ("[U]nder the [Hague] Convention, service by e-mail on defendants in China is prohibited."); *CRS Recovery, Inc. v. Laxton*, No. C 06-7093 CW, 2008 WL 11383537, at *2 (N.D. Cal. Jan. 8, 2008) (denying motion to serve defendant in China by email under Rule 4(f)(3)).

The Court appreciates the exigent circumstances facing Mr. Mattson. In the time it would take to effect service through the Central Authority, his remaining assets could be lost. Therefore, Mr. Mattson may email this Order to the Exchange Defendants as specified for the purpose of providing actual notice. *See Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807 827 (N.D. Cal. 2025) (quoting *SEC v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980)). The Court reserves determining if email service of the summons and Complaint is proper for the Exchange Defendants.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Alternative Service. If Mr. Mattson wishes to renew his motion, he must address whether email service is permitted under the Hague Service Convention and demonstrate how the proposed service is reasonably calculated to apprise the Exchange Defendants of the action. *See Prolacta Bioscience, Inc.*, 2025 WL 1040638, at *1 (allowing email service when plaintiff proposed email addresses listed on the defendants' webpages, had successfully corresponded with company representatives through those addresses, and had attempted to serve defendants' US counsel). Further, if he wishes to serve Doe via NFT, he must explain how efforts to serve via a more conventional method have been unsuccessful.

/ / /

/ / /

## LEAVE TO FILE DOCUMENTS ELECTRONICALLY

Generally, "[e]xcept as prescribed by local rule, order, or other procedure, the Court has designated all cases to be assigned to the Electronic Filing System." S.D. Cal. CivLR 5.4(a). For *pro se* litigants, however, "[u]nless otherwise authorized by the court, all documents submitted for filing to the Clerk's Office . . . must be in legible, paper form." Office of the Clerk, United States District Court for the Southern District of California, *Electronic Case Filing Administrative Policies and Procedures Manual*, § 2(b) (January 16, 2026) [hereinafter "*ECF Manual*"], *available at* https://www.casd.uscourts.gov/_assets/pdf/cmecf/Electronic%20Case%20 Filing%20Procedures%20Manual.pdf. "A pro se party seeking leave to electronically file documents must file a motion and demonstrate the means to do so properly by stating their equipment and software capabilities in addition to agreeing to follow all rules and policies in the CM/ECF Administrative Policies and Procedures Manual." *Id.* The *ECF Manual* refers to the Court's official website for CM/ECF technical specifications, *id.* at § 1(i), which include a "[c]omputer running on Windows or Macintosh"; "[s]oftware to convert documents from a word processor format to portable document format (PDF)," such as "Adobe Acrobat 7.0 and higher"; "[i]nternet access supporting a transfer rate of 56kb or higher"; a compatible browser, such as "Firefox 15, Internet Explorer 9, and Safari 5.1/6 or later version"; a "[s]canner to image non-computerized documents 400 pixels per inch (ppi)"; and a PACER account. United States District Court, Southern District of California, *CM/ECF Information: General Info*, https://www.casd.uscourts.gov/cmecf.aspx (last visited November 18, 2026).

Here, Plaintiff represents that he has been filing electronically in this District for more than four years, has been filing electronically in the Central District of California since the inception of this case, is a PACER subscriber, has equipment and software sufficient to meet the required technical specifications, is familiar with the District's policies and procedures, and will comply with all relevant privacy policies. *See generally*

/ / /

Motion for Leave. Accordingly, the Court **GRANTS** Plaintiff's Motion for Leave to Electronically File Documents (ECF No. 5).

## CONCLUSION

In sum, the Court **GRANTS** Plaintiff's *Ex Parte* Motion for Temporary Restraining Order (ECF No. 2), **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Alternative Service (ECF No. 3), and **GRANTS** Plaintiff's Motion for Leave to Electronically File Documents. For the reasons set forth above, it is hereby **ORDERED** as follows:

1. Effective immediately upon notice of this Order, Exchange Defendants WhiteBIT and KuCoin, and their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of this Order, are **RESTRAINED** from transferring, withdrawing, dissipating, trading, converting, or otherwise disposing of the following specific, traceable assets and shall **FREEZE** and **PRESERVE** them in place:
    a. Any cryptocurrency, and any traceable proceeds thereof, attributable to the deposits identified below, and identifiable proceeds traceable to that cryptocurrency, still held in or traceable through the customer accounts associated with:
        i. WhiteBIT XRP tag 3214965853, transaction ID 8FF9D1BDD708A80CA3CA7934A71BF9A80C9414F7880779E838AE387398496CD4;
        ii. WhiteBIT XRP tag 1587611258, transaction ID F892B2E37B8D731F98541D6C8F0728E92085F936899177F28B47FF05427C0B1E;
        iii. WhiteBIT deposit address 0x0e82c0f5560ba5ec225772dea243d3668b9ddabb and receiving wallet 0x39f6a6c85d39d5abad8a398310c52e7c374f2ba3, deposit of 10.529609 ETH in transaction

0x2b6b03fe3b0acfbc8222b213c674a7284583e5df79200527174576ea40896efc;

iv. WhiteBIT deposit address 0xf403b24c2b88fa05f3a33f22811f807effbaf631, deposit of 4.572779 ETH in transaction 0xff5c6a217374803fc938dd1141eebc1137f3f5b6c9d55f3fda0c1d403411ec7f;

v. KuCoin deposit address 32QWU6bFzDgMKtcN5fJvN3bfkLXR9qDzwN, 0.92999383 BTC in transaction ac4fdf6769ada4bd7325580d7e04b492566613c17eea76ed92d4bd7504551883 and 0.57000000 BTC in transaction 8eb86dc27b40e3ecdb267a031a2047d80d6209e22b86881d772f425790eec6d1, up to 1.49999383 BTC.

b. This Order reaches only the specific assets described above and does not restrain the Exchange Defendants' general operations or any accounts or assets unrelated to the alleged theft.

2. Defendant John Doe is likewise, upon notice of this Order, **RESTRAINED** from transferring, withdrawing, dissipating, or otherwise disposing of the assets described in Paragraph 1 and of the stolen cryptocurrency held at any wallet address identified in this Order.

3. Plaintiff **SHALL PROVIDE** notice of this Order to Defendant John Doe, Exchange Defendants, and all third-party platforms and exchanges that hold or control the above assets on behalf of Defendant John Doe, pursuant to Federal Rule of Civil Procedure 65(d)(2).

4. This Temporary Restraining Order shall remain in effect until December 3, 2026, at 6:00 p.m. unless extended by the Court for good cause shown or upon the consent of the Parties.

5. Because no evidence before the Court demonstrates that Defendants will suffer any damages as a result of the requested temporary restraining order, the Court will not require Plaintiff to post a bond.

Additionally, Defendants are **ORDERED TO SHOW CAUSE** at a hearing on December 3, 2026, at 1:30 p.m. in Courtroom 4D of the Edward J. Schwartz Courthouse why this Court should not enter a preliminary injunction, continuing the asset-preservation restrictions set forth and imposing such additional relief as the Court deems just and proper, pending final ruling on the claims asserted against Defendant John Doe. Defendants **SHALL FILE AND SERVE** any answering affidavits, pleadings, motions, expert reports, or declarations on or before November 27, 2026. Plaintiff **MAY FILE AND SERVE** any responsive or supplemental pleadings, materials, affidavits, or memoranda on or before November 30, 2026.

**IT IS SO ORDERED.**

Dated: November 20, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge